IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA          *

       v.                        *     CRIMINAL NO.:  WDQ-08-0438

DAVID RICH,                       *

       Defendant.                *

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

On February 19, 2009, the grand jury indicted David Rich for conspiracy to distribute heroin, assault on a law enforcement officer, and related charges.  Pending are Rich's motion to suppress wiretap evidence and motion to suppress search and seizure.  For the following reasons--and those inferable from the Court's colloquy with counsel during the motions hearing on September 28, 2009--the motions were denied.

I.   BACKGROUND

In mid 2006, the Baltimore City Police Department began an investigation of the Black Guerilla Family drug trafficking organization ("the organization") in the Pennsylvania Avenue section of the city. Govt. Opp. at 2.  On June 4, 2008, the Circuit Court for Baltimore City authorized the interception of communications with a telephone ("Line A") associated with Jarmaul Edwards, a member of the organization.  *Id*.  On July 14, 2008, the Circuit Court for Baltimore City authorized the interception of communications with a telephone ("Line G")

associated with Mark Owens, another member of the organization. *Id.* at 3-4. On July 22, 2008, a conversation between Rich and Owens over the Line G was intercepted. *Id.* at 4.

On August 25, 2008, a confidential source told DEA Task Force Officer Brian Shutt that Rich had a large amount of heroin. Govt Opp. Ex. 4 at 1. Acting on information from that source, investigators established surveillance near the home of Mark Wright, believed to be a co-conspirator of Rich. *Id.* A black Mercedes Benz associated with Rich was followed from Wright's residence. *Id.* After losing sight of the car, investigators were able to re-establish surveillance and followed it to 2702 Gresham Way, Windsor Mill, Maryland. *Id.* at 1-2.

Shutt, believing he was observing 2700 Gresham Way, saw a man he did not believe was Rich on a third floor balcony. *Id.* at 2. Shutt saw Tiffany Lucas arrive in a minivan that reportedly had been used to transport drugs; she carried a large travel bag into 2702 Gresham Way. *Id.* at 2. About 20 minutes after her arrival, she left and was stopped by police; she denied having been at 2702 Gresham Way and was detained. *Id.* at 2-3.

On August 26, 2008, Shutt saw the man he did not believe was Rich enter the black Mercedes. *Id.* at 4. When Shutt ordered the man out of the car, he quickly drove toward Shutt and left the area. *Id.* Pursuing officers discovered the Mercedes abandoned near woods. *Id.* Rich was found hiding in the woods with cash

and five cell phones. *Id.* at 4-5. When Shutt went to a local police station, he identified Rich as the man he had seen on the balcony. *Id.* at 5. From an inspection of the location he had observed, Shutt realized its address was actually 2702 Gresham Way, apartment 301. *Id.* He drafted a search warrant application for the apartment. *Id.*

II. DISCUSSION

    A. The Motion to Suppress the Wiretap

    Section 2518 of Title 18 of the United States Code authorizes the government's interception of telephone conversations upon a showing of probable cause that communications about an enumerated offense will be obtained. 18 U.S.C. § 2518(3). The government must show that conventional law enforcement techniques have been exhausted, i.e., they have been tried and failed, appear to be likely to fail if tried, or would be too dangerous. *Id.* § 2518(3)(c). Maryland's wiretap statute is similar. Md. Code Ann., Cts. & Jud. Proc. §10-408.

    Rich has not challenged the sufficiency of the probable cause underlying the wiretaps; rather, he contends that the Line A intercepts should not have been authorized because the investigators failed to exhaust alternative investigative methods. Mot. to Suppress Wiretap at 4-6. Because the Line G intercepts were authorized based on communications over Line A, he contends the conversation between Rich and Owens over Line G

should be suppressed. *Id.* at 6.

Rich concedes that the Government's burden in demonstrating the inadequacy of alternative investigative methods is "not great." *Id.* at 5 n.1. He also acknowledges that courts will not "invalidate a wiretap order simply because defense lawyers are able to suggest post factum some investigative technique that might have been used and was not." *Id.* (quoting *United States v. Hyde*, 574 F.2d 856, 867 (5th Cir. 1978)).

The affidavit for the Line A interceptions did not contain mere, unsupported conclusions that various investigative techniques would fail. Rather, it noted that although confidential informants had been used in the investigation, they had been unable to identify, *inter alia*, sources of supply, locations where drugs were secreted, or the homes of the targets. Govt Opp. Ex. 1 ¶¶ 87-89. The affiants noted that they did not have an informant capable of infiltrating an undercover officer into the drug conspiracy, and although an informant had been able to procure drugs for an undercover officer, mere purchases would not provide information about the structure of the organization and its acquisition and distribution of drugs. *Id.* ¶¶ 90-93. Moreover, an officer with extensive knowledge of the organization was too widely known in the area to be used undercover. *Id.* ¶ 92.

The affidavit demonstrated that physical surveillance was

4

unlikely to succeed. Most targets did not regularly use cars, so investigators were unable to use Global Positioning System ("GPS") devices to track them. *Id.* ¶ 94. The targets used lookouts who had informed them when surveillance had been attempted. *Id.* The targets also avoided operating near pole cameras. *Id.* ¶ 95. The affidavit noted that, although telephone records had been used to corroborate an informant, the records lacked detail. *Id.* ¶ 96. The targets were unlikely to truthfully participate in interviews or waive the privilege against self incrimination before a grand jury. *Id.* ¶ 97.

Search warrants had been used in the investigation but investigators had not identified other locations to search. *Id.* ¶¶ 98-99. Trash searches were unlikely to be helpful because it was unlikely that the targets--whose residences were unknown, *id.* ¶ 87--would discard evidence at home. *Id.* ¶¶ 101-02. Finally, although a GPS device had been used to track one target, other targets' cars had not been identified. *Id.* ¶ 103.

Assuming, without deciding, that Rich has standing[1] to

---

[1] Rich was not intercepted on Line A. Accordingly, as to Line A, he is not an "aggrieved person" who may move to suppress an interception pursuant to 18 U.S.C. § 2518(10)(a). An aggrieved person is "a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). That Line A intercepts were a basis for authorization of Line G does not grant him standing to challenge authorization of Line A. *United States v. Mercado*, 110 Fed. App. 19, 21 (9th Cir. 2004). Although Rich has not challenged the government's failure to exhaust alternative investigative methods for Line G, such a

challenge the Line A wiretap, he has failed to demonstrate any deficiency in the exhaustion section of the Line A affidavit. The Line A affidavit, viewed in a practical, commonsense fashion, adequately informed the Baltimore City Circuit Court Judge of the difficulties involved in the use of conventional techniques and why those techniques were unlikely to identify, *inter alia*, the targets' confederates, suppliers, customers, storage locations, and quantities and types of contraband. *See United States v. Smith*, 31 F.3d 1294, 1297 (4th Cir. 1994)(exhaustion showing is "tested in a practical commonsense fashion"); and *United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000). Accordingly, the motion to suppress the wiretap was denied.

> B. The Motion to Suppress Evidence Seized from 2702 Gresham Way, Apartment 301

Rich asserts that the affidavit supporting the search warrant for 2702 Gresham Way, apartment 301 did not inform the issuing judge "correctly of the observations of the officers." Mot. to Suppress Search at 5. Thus, he contends, certain statements must be stricken from the affidavit; absent those statements, the affidavit lacks probable cause, and evidence from

---

challenge would fail because the detailed, factual description at pages 39-53 of the Line G affidavit, when viewed in a practical, commonsense fashion, adequately informed the issuing judge of the difficulties involved in the use of conventional techniques and why those techniques were unlikely to identify, *inter alia*, the targets' confederates, suppliers, customers, storage locations, and quantities and types of contraband. *United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000).

the search must be suppressed. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

To obtain a *Franks* hearing, Rich had to show that the affiant included a false statement made knowingly and intentionally or with reckless disregard for the truth; next, he must show that the statement was essential to the probable cause determination.[2] *Id.*; and *United States v. Colkley*, 899 F.2d 297 (4th Cir. 1990).

Rich asserts that Shutt falsely affirmed that he saw Rich leave 2702 Gresham Way, apartment 301. Mot. to Suppress Search at 4-5. Rich bases this assertion on discovery provided by the government. *Id.*; Govt Opp. Ex. 4 at 3-4. The DEA Form 6 ("DEA 6") upon which Rich relies says that Shutt had observed a man he did not believe was Rich on a balcony at 2700 Gresham Way and had seen this man enter the black Mercedes. Govt Opp. Ex. 4 at 3-4. Rich ignores the remainder of the DEA 6, which recounts that Shutt went to a local police station, identified Rich as the man he had seen on the balcony, and, from an inspection of the building he had observed, determined its address was actually 2702 Gresham Way, apartment 301. *Id.* at 5.

As Rich has not demonstrated that the statement that he was

---

[2] If probable cause remains after the offending information is excluded, there is no need for a *Franks* hearing. *Franks*, 438 U.S. at 156; and *United States v. Friedemann*, 210 F.3d 227, 229 (4th Cir. 2000).

observed leaving 2702 Gresham Way, apartment 301 is false, he has not shown his entitlement to a *Franks* hearing. Shutt's experience that drug dealers often used their residences (to conceal drugs, proceeds and records of their dealings), the reliable informant's report that Rich and Wright were dealing drugs, the observation of Rich leaving Wright's residence, Lucas's brief visit to Rich's apartment in a minivan that had reportedly been used to carry drugs, her denial that she had been there, Rich's flight from police when confronted, and the K9 alert for drugs in Rich's car--these facts all establish probable cause for the warrant. Accordingly, the motion to suppress evidence seized from 2702 Gresham Way, apartment 301 was denied.

III. CONCLUSION

For the reasons stated above, Rich's motion to suppress wiretap evidence and motion to suppress search and seizure evidence were denied.

September 30, 2009                          /s/
Date                              William D. Quarles, Jr.
                                  United States District Judge